The next case is Lanasa v. Stiene. Good morning, Your Honors. My name is Bernard Kleinman. I represent the appellants, Mr. Lanasa and the two business entities that are named herein. I want to focus today on the tort claims that are raised, that my client raised in his complaint, the claims for defamation, the OIED claim and the prima facie tort claim. I know there were other issues raised on appeal and I'd like to focus on those issues. Before we get into the details, counsel, let me ask you, I mean, we're not in district court anymore, but I will tell you that I might have been inclined, if I were the district court judge, to simply reject the second amended complaint out of hand for failure to comply with the order regarding what was permitted on amendment. So the district court is very clear that what can happen is that this letter that the district court received says, we have two issues. One is we're going to remove any allegation that he lacks a criminal record because of some misdemeanor. And two, we're going to remove any reference to Lois, who just has nothing to do with this. And the district court says, okay, give me a red line. And the red line is not a comparison between the second amended complaint and the first amended complaint. And it does a bunch of things differently, not just limited to those two things. Why should the district court and why should we on de novo review even accept and review that second amended complaint? The reason is, is that the error was in naming, whether it was Lois or Rachel, I think it was Rachel Steen, because there was confusion as to whether who that individual was. I understand. It wasn't until later on that it was clear that the named individual, one of the named individuals was Mr. Steen's mother and the other was in fact his wife. Well, not one of the named individuals, only Lois was named. Well, I believe it said, I believe it said, AKA. And so, because it was Lois Steen, AKA Rachel Steen, because my client just did not know who was who. Okay. When Judge Matsumoto said you can red line the complaint and remove the references to the mother, since the mother slash wife was referenced throughout the entire complaint on all the causes, on the relevant causes of action, it seemed to me that the correct way to amend the complaint to be in compliance with her order was to remove the, anytime there was a reference to the mother, substitute in the reference to the wife. Ah, substitute. That's a different word than remove. It's not what the district court's order says. It says, quote, solely for the purposes of allowing plaintiffs to remove the allegations discussed in their November 26th letter and any other allegations they believe may no longer be raised. And those are specifically plaintiffs in detention, intention to remove Lois as a defendant and to remove representations that Lanasa has no criminal convictions. And I'll note that by the way, there's also a change in the substance. The count suddenly changed from plain defamation to defamation per se. There are other changes that aren't, and it's not a red line. The red line would reflect the insertion of Rachel and the replacement. The red line simply reflects the deletion. Well, it's not a red line. Right. Well, the thing is, all throughout the complaint, it did reference the fact that there were alleged defamatory statements made by both Mr. Steen and the female that appeared on those YouTube videos. Okay. So, but none of, we can move on from this, but my, I want to pose this to you. Okay. Is it your contention that the second amended complaint, one complies fully with the district court's order as to what was permitted and two, that the red line fairly and accurately represents the actual differences between the second amended complaint and the first amendment? Yes, it does. Okay. Thank you. Now getting back to the issue about the defamation and the IAED claim and the prima facie tort claim, Judge Matsumoto found that most of the allegations, if not all of them, regarding the defamation claims were opinion statements. And she even referenced in her, were non-actionable insults, I think she also referenced. And she said, as such, and we know that if something is merely an insult or an opinion, it's not something that can be raised on a defamatory, a defamatory cause of action. Okay. However, the statements made a supposition of the appellant that these statements in fact were not merely opinions, but they were statements of fact that could be provable. And in fact, what's odd is that Judge Matsumoto in her own, in her own opinion, stated that theoretically, she stated that more context theoretically could render some of these statements defamatory. Well, it's my understanding that if the- Which ones are you- I'm sorry, Judge? Which ones are you asserting are statements of facts? I'm asserting that statements of fact, for example, are a claim that Mr. Lanassa was, quote, a warrior for the old ways that he, I'm quoting from what he said, he fucked over his business partners, and Lanassa, quote, included a Nazi in his company, and that he was inadvertently honest. Now, if I make a statement- So, isn't the included Nazi in his company- I'm sorry? Isn't he included a Nazi in his company exactly the kind of thing that the district court is talking about? So, sometimes people use Nazi as an epithet to give their opinion of that person's views, and sometimes they're referring to somebody who is literally a member of a Nazi political organization. Well- So, that is the kind of thing that could either be a factual statement or a matter of opinion. So, what about the context shows that here it's a factual statement as opposed to an opinion? Well, the reason I believe that it shows, first of all, he says that he specifically included a Nazi in his company, and I think it is a matter of fact that a jury can look at and say, well, how do you show that John Doe is a Nazi? Well, he has pictures of Heydrich and Himmler and von Ribbentrop in his and he's attended rallies from organizations that are characterized as neo-Nazi, or the answer could be, well, I don't have any proof whatsoever that he's a Nazi. I just decided to say that because I know in the context of certainly of a- of slandering and libeling a business entity, no one is really going to want to do business with a company that supposedly hires and retains the business- retains personnel who are Nazis. I understand, but somebody might not do business with somebody- with a business that is the subject of a bunch of opinion statements, right? If I- if somebody were to say, the owners of this business have really outrageous political views that I believe are inconsistent with right- the views of right-thinking people, maybe that will discourage people from going to that business, but that is not a defamatory statement because obviously a matter of opinion. That's a different statement than actually saying that someone that you're employing is a Nazi. If I make the statement that- Right, so you're saying that in context he- the- the claim is that he literally was employing somebody who is an adherent of a Nazi political group. Well, he actually said that he was- he wasn't an adherent of Nazi- of National Socialism. He was actually a Nazi, rather than just saying, you know, someone believes in, you know, the theories of Karl Marx, or someone believes in the theories of- But the district court also, you know, faulted your client for failing to allege the falsity and the harm caused by a lot of these statements. So, I mean, are there allegations in your complaint that the company included a Nazi were false statements? Yes, I believe that in the complaint he did allege that these were all false and defamatory. Which is to say it's false, right? But don't we require you to produce some kind of factual basis for that? Well, the factual basis is my client denying- I mean, if these are completely false statements, my client has no way of proving the fact that he's- that he does not employ a Nazi. How about the allegation that he f'd over his prior business partners to get the TSR trademark? How did you provide some context as to the falsity of that claim? Well, the only thing is that that also was a factual statement about how my client had run his business, which there was no proof that was ever provided. Merely a statement made by Mr. Steen that this was something that he had done. And this goes to the claim that he was dishonest, or inadvertently honest is the same way, same thing as saying someone is dishonest. And you can again prove all of these- Could you just- could you just identify the statement that you think is most clearly a factual statement? And then identify where in the complaint you alleged the falsity and the harm from the defamation. I don't know that, Your Honor, that these are clearly a factual statement. If I say- The one- let's say I asked you just- I'm without prejudice to the idea that other statements might also be the basis of liability. What is the clearest example of a statement that is a factual statement where you adequately alleged what the district court thinks you didn't, which is the falsity and the harm? Well, I think the statement that he actually employed a Nazi in his company, because remember- That's the most clearly- I think that is an example of one of the- Where in the complaint do you talk about how that was false and it's caused harm to your client? I believe I- I'm sorry, I don't have a copy. I'm not sure what it is. Maybe in a rebuttal you might- you might point it out. Yeah, I think- yeah, I will point- I'll point that out in my rebuttal, Your Honor. But I think also there were other issues that were raised. And I think the fact that there is some open question as to whether, in fact, whether these were opinions or not, sufficiently- sufficiently meets the bar that's necessary that on a 12B motion, the case should have at least gone to at least some discovery. Remember, Judge Matsumoto had recommended the parties continue- go through discovery and that on a rule- But there was discovery through adequate allegations. I agree that if the district made a mistake or an error by saying that something is a matter of opinion when, in fact, it's a factual statement, that would be an error. But there would still need to be, you know, the adequate pleading of the elements of a defamation claim, right? Yeah, I agree. That's true. Which is why I'm asking about where I should look in the complaint for those. All right. And if I have- if I can have the opportunity, I think also the IIED claim, which my client raised. Again, this was- You can take- well, you've used your time. Oh, I think I have. I've got two minutes on the act- on that claim. Okay. Thank you, Judge. Or you could address it on rebuttal. On rebuttal, I'll address it. Thank you. Still, good morning, Your Honors. May it please the Court, my name is Daniel Schneider, and I represent the defendants of Hallease, Eric Steen and now Rachel Steen, in this matter. I was going to talk about amendment first, but since Your Honors brought up some very good I did want to just address the sufficiency argument on the defamation claim. That is a- Judge Matsumoto correctly identified that that is a question of law for the Court to decide. And Judge Matsumoto correctly, especially with the statements that we were talking about, correctly held that there were no facts to back up the falsity of any of those statements. The claim that there's a Nazi in the company, who better to tell us about who is in their company, in the company, than Justin Lanasa to say, hey, this is a factual statement. I know who's in my company. There's no one there. But isn't that just what he does? If the complaint just says that's a false statement, isn't that equivalent to him saying, I don't have a Nazi in my company? Are you just saying he needs to put these magic words, I'm aware of the employees and there is a Nazi? No. No, because, and Judge Matsumoto cites this, that the case law states that there needs to be more than bare assertions. And all he did was say- All right, so what does that look like? So let's, so for, because you brought up this example, let's take for example, the Nazi thing, assuming that's a statement of fact. If he says it's a false statement, and you're saying that's an adequate pleading, what would he have to do? He has to list out all the employees and like all of their associations to show that not one of them belongs to a Nazi group? Is that what he would have to do? Not necessarily. So what would satisfy his pleading? Like assuming that it's a false statement, what would satisfy his pleading obligation? I mean, off the top of my head, I think that he- This is off the top of your head. I mean, this is like the central point of the case. Well, no, of course. But what I'm, what I'm trying to say to you is, short of listing everyone in the company, is short of listing everyone in the company, Mr. Lanasek could say, I employ X, Y, and Z number of people in my companies. And I am not aware of a single Nazi in my company. Now, if it's not a motion to dismiss and we make inferences in favor of the complaint, if he says the statement that I've employed a Nazi is false, doesn't that, isn't the reasonable inference, he's aware of who's in his company and doesn't believe any of them are Nazis? Well, I think that, you know, I think that there are inferences and then there are pleading standards. And this, and rule eight clearly requires that there be sufficient facts and you just do not recite the prima facie case. And, and that's all that, that's all the plaintiff did on that particular- I agree with that. If it takes, if you need facts to make the showing you're talking about, but you're saying because he is the employer, which he is, he can assert on his own authority that he knows who his employees are and they're not Nazis. And I'm saying, it seems weird to have him spell that out. If everybody would understand the statement, it's false that I employ a Nazi to mean exactly what you just said. Well, I'm not so sure that's true. I'm, I'm not so sure that in just saying it's false, I, there, there's nothing to say that I did any due diligence and I have a good faith basis to say that that's false. If, if he alleged I, I question every one of my employees or, I mean, these are- I kind of, I kind of appreciate that. Maybe the Nazis slipped by the interview process or something, but, but that's not even the statement. The statement is not that-  Like somebody slipped by. It's that, that, that Lanasa is intentionally bringing Nazis into his company, right? Well, that, I mean, but that's not, but that's not the basis of the statement. The statement in the context is he employs Nazis and, and Judge Menashe, I, I credit your point that, you know, people use the word Nazi all the time. You know, they, they've used the word Nazi to characterize our president who is, you know, there's no evidence that he was a member of the Nazi party, which is, you know, an opinion of, of many. So I think that that- So I get that there's an argument about whether this is a statement of fact or opinion. Right. But the district court also made a sort of blanket ruling on a lot of other statements that they just wasn't specifically alleged that there was falsity. And so that's why I wanted to explore what that, what that standard requires. So the false- How about the other, the statement that he F'd over his prior business partners to get the TSR trademark? Your, your argument is that you can't just in a conclusory manner say that's false. If you're saying that statement was made and you were defamed by it, you should say something about how you went about getting the TSR trademark. Yeah, rule- In reference of your business conduct. Exactly. I think rule eight, I think rule eight requires you to do more than just recite the elements of the prudent fascia case. Is that one even about Lanasa? The context doesn't even suggest that the person he's talking about that F'd somebody over is Lanasa. It suggested some other guy whose name I'm blanking on, but- I mean, that is a good point. And I, and I had not, I had not gotten a granular- Ernie, Ernie Gygax. Right. Ernie Gygax, whoever that poor fellow is, who's not here representing, but it doesn't, these things are not, there's so many layers, I guess. So can you talk to us about what it feels like the district court did was sort of say, there are so many problems here. Sometimes it's a lack of a showing of falsity. Sometimes it's that it's opinion. How closely do we have to parse this, right? Do we have to take each statement and go through, or do we, can we sort of do what the district court said and say, well, these just fail? Well, I, I think the district court did lay out several of them that were, I think that, I think that the final, the final group that, that lacked a factual basis of falsity and of injury were the few that were left over. We had, the court correctly found that many of them were basically locker room talk insults, which are, which, which it's black letter law are not, defamatory. The district court found that many of them were opinions. What about the statement that he doesn't like homosexuals and won't work with people that support homosexuals? The district court said that that was an opinion, but isn't that probably false? I mean, isn't that really a statement? I mean, I see how it could be defamatory if people think he's has prejudice. I mean, you could prove whether he will or will not work with people who support gay rights or whatever that means in particular. Like, why is that a statement of opinion? Because, well, number one, number one, why that, why that's a statement of opinion is the context that was provided in the complaint. And I think that this was, I think that this is a, a critical point that Mr. Lanasa and the corporate plaintiffs just threw a flurry of links into the complaint that would have, you know, caused the court to have to parse through hours and hours and hours of video and just threw in statements without context. In that context, and I think that this was Judge Matsumoto's point when she said with more context, maybe, maybe these things could have been defamatory. But, you know, just throwing out a statement like that is in, you know, in the context that was presented in the complaint is incapable of being, being proven true or false. But even if it's taken out of context, if I said somebody doesn't like gay people and won't work with anybody who supports gay people, just shorn of all context, doesn't that seem like a factual statement? Uh, not necessarily. So why? Because people engage in insult all the time. And this is, you know, this is a community, you know, this is a community that, you know, is a very insular community. You're referring to the gaming community. The gaming community. And I actually believe it's a subset of the gaming community. And, you know, Mr. Steen has a show on a channel that is consumed by, you know, he has 6,000 followers on his YouTube. But which way does that cut that it's an insular community? Doesn't that mean people might assume that he has knowledge about other people in the community because it's a small community where people know each other? Well, I mean, the, well, the, the, the fact is, is in, in the context of, of this particular case, especially in light of, um, you know, what we do know from the complaint is that, uh, Mr. Lanassa and Mr. Steen live, uh, you know, a country apart. Um, Mr. Lanassa, well, I guess Mr. Lanassa's entities are in Wisconsin. His, uh, his, his body is in, uh, is in North Carolina. Um, and, you know, Mr. Steen is in New York. Um, so they, they don't live close to one another. You know, this is one of those communities, uh, which is, which is typical in social media these days where people are not, um, in the same room ever and, you know, have rarely met each other in person. So, uh, you know, it's, but the point is, is that, you know, these, these online spats, which is what this was, which, uh, which is what Mr. Lanassa is trying to turn into a defamation case. Uh, these online spats, um, were, you're saying basically that a reasonable viewer of the videos would just think that the Steens were having a temper tantrum and didn't really mean anything as a factual statement. Is that, is that what you're saying? I'm saying, I'm saying, yes, I'm saying that it, you know, their show was about, you know, the fact that Mr. Lanassa offended them. They've offended Mr. Lanassa right back. And instead of, you know, suing him in court for defamation for, you know, things that he may have said about them, you know, they took to their channel and, uh, and insulted him. So, uh, yeah, I believe that, um, I believe that in the context of the statements that are in the complaint, none of these can be viewed as defamatory. Well, could you address the posting of his spouse and child's images on the YouTube channel and, um, moving on to the IIED claim? Uh, sure, Judge Livingston. Um, thank you. So the posting, number one, um, so that's, yeah, that relates to the IIED claim. Uh, and, um, the posting was a public picture that, uh, Mr. Lanassa's wife posted herself. It was a, there, there's no dispute that it was a thumbnail of, of something that she put in the public sphere on her own. Uh, Mr. Lanassa has never denied that. Uh, you know, we have, we've briefed that we have, uh, we have talked about that in our papers ad nauseum. Number two, um, IIED. So the element, and I, and I believe that, um, uh, Mr. Kleinman is going to discuss this. Um, he's going to ask for a jury on what is, uh, outrageous, extreme and outrageous. That is a, that like defamatory is a question of law for the court to resolve it. That can be resolved at the pleading stage. Um, those two elements are similar in that regard. And without, you know, there was, there was, if no reasonable jury would think that it was, the action was extremely outrageous, right? Well, that's, that's, that's exactly right. Well, that's exactly what, um, Judge Matsumoto, uh, held in, in, in, in, uh, ruling that all of the defamatory statements were not actionable and that the IIED claim was not actionable. So the, um, you know, Judge Matsumoto held that there was no evidence that, uh, without more that, that, that rose even close to the level of extreme and outrageous. And she cited cases where there were horrible acts that were not extremely outrageous. Number two, um, uh, IIED requires a pattern of conduct and a one-time posting of, of this, uh, that, you know, goes into the ether doesn't, I think that Judge Matsumoto would agree fell far short of, uh, extreme and outrageous. Um, but all told when you post a picture that's been in the, that, that was obtained in the public There are multiple videos, right? I'm sorry? There are multiple videos, right? I don't, I don't have any recollection of, uh, more than one with, uh, that thumbnail. Oh, you mean the thumbnail? Yes. Yeah. You know, there are multiple videos, uh, with various claims and, and, and by the way, it may be worth noting that, uh, when you actually watch the videos as I had to do, uh, when you put the actual context around these things, they mean something entirely different than, uh, Mr. Kleiman has alleged. Did you come away from watching the videos without a more negative impression of Mr. LaManna? I'm sorry? Did you come away from watching the videos without a more negative impression of Mr. LaManna? Uh, oh, um, I, I, I didn't, I, you know, my opinion of, uh, Mr. Lanassa had been pretty much formed by the time I, yeah, yeah, no, um, uh, by the time that I had watched the video. So it didn't really move the needle one way or the other. It just, it just sort of confirmed the fact that, you know, since context matters, when you watch them in context, uh, you know, these, these statements, you know, while vulgar, uh, Judge Matsumoto would concede that they were vulgar, are not, are not saying anything that's actionable. For instance, um, for instance, the, the, you know, the, what, what a plaintiff claimed or appellant claims is the threat of violence. When you watch that in context, it's, you know, hey, uh, you know, it's, it's, it's just tough talk on the internet. It didn't rise to the level of anything that anyone could actually be worried about. Thank you. Mr. Kleinman, you'll get the opportunity to address the IIED. Thank you, Judge Livingston. I appreciate it. Okay. I think the problem with the, uh, appellee's position is that really trivializes the nature of not only the posting of Mrs. Lanassa with their, with their young daughter sitting on her lap, but, uh, I think also that posting that picture in and of itself within a complete vacuum would not be an issue. But when Mr., when Mr. Steen also throughout his videos made comments such as, uh, I hope, uh, speaking of, uh, the appellee about Mr. Lanassa, I hope they, Mr. Lanassa and his family, like Led, because I have plenty to offer if that is the case. He also stated, I already know your address. I already know your, excuse my language, fucking phone number. I know your wife's phone number. Okay. Steen claimed, I don't know if he was, cause I never got the opportunity to, uh, do an EBT with him, claimed that he was an ex-NYPD officer. The court knows that ex-NYPD officers are allowed to carry a firearm under most circumstances. The standards are much lower. Taking these... Doesn't the allegation repeatedly though, say the stuff about Led, that if he comes to my house... I'm sorry, Judge. Doesn't it say I have plenty of Led for him if he comes to my house? Isn't that what the context of that statement is? Uh, it may have been in that context. I don't recall, to be honest with you, Judge. It's paragraph 73, but it says I, Jackass comes to my house. I have, I hope they like Led because I have plenty to offer if that is the it demonstrates that you come to my house, my first reaction is going to be, I'm going to shoot and kill you. I also, by the way, not in that same video, but by the way, let me throw out this, that I know where you live. I know your phone number. I know your wife's phone number. Well, why would he mention his wife's phone number? He's already posted the picture of Mrs. Lanasa and their minor daughter. He also made no effort to, uh, blur the image of the child. And it's fairly easy. I mean, I, in my pleadings, I blurred and I'm, I ain't no expert on computer technology. I was able to blur it without any issue. That ain't difficult whatsoever. In response to the point that it's, um, it's an image that she herself had put out onto the internet and he was just pulling something from the internet. Well, first of all, why is the, why doesn't that make the use of it seem less extreme and outrageous? Well, the fact that one post is post an image on the internet does not mean that every party can take that image and then use it for their, and Mr. Steen operated his website, his YouTube video as a commercial site and sold things that he could use that picture for commercial purposes. I referenced, I think in my pleadings, the, uh, New York. He could have, but it's not the allegation that he did. So like, I don't, that's, maybe it would be extremely outrageous if he did something weird with the picture. I don't know, but is there an allegation that he did that thing? That, well, there's no specific allegation that he used that picture to sell, you know, whatever products Steen might be selling, but the fact that his website exists, a major purpose is in order to sell t-shirts or whatever else he's selling to individuals who are in this particular community, raises the issue that the image is forever. Also, I had sent, when I sent my initials. Well, the image is there forever also because she put it on the internet too, right? Exactly right. But people post pictures on Facebook, you know, within the. Somebody could do something with it based on her posting of it or his use of it in a video. I'm sorry, Judge? Somebody could do something with it based on her putting it on the internet or his putting it on the internet, but like that thing would have to be evaluated as whether it's extremely outrageous, right? Correct. And also I believe. Um, I think I understand that argument. Uh, you said maybe you'd point me to something in the complaint about the allegations of the falsity in the. Right. It's, um, Nazi comment in the, uh, first amended complaint to paragraph 22. Second amendment complaint is also in the second amendment. Well, that's the operative complaint. Yes. So I have, so is it the same paragraph? It says, um, paragraph 22 of both complaints among, but not limited to the knowing knowingly, uh, malicious and intentional and false and defamatory statements. I know the client never had the opportunity judge to provide context for how, why these were false. Remember our transcripts in which the court is saying, um, I don't see how it's defamatory. There's no context. There's no link between the statement of the plaintiff. Uh, I don't discern, uh, you know, the status of your client and so on. Like didn't the district court say that there was these pleading problems before you amended the complaint? Yes, she did. That's true. So didn't she give you the opportunity to add the additional context? So that was an opportunity to add the context. Well, it was an opportunity to add context, but, um, first of all, the second amended complaint was very limited in what I could do with that Rachel Steen. So I wasn't going to start adding additional causes of action, but at any, in any event, your honor, I think that one of the, uh, I don't want to go back to this, that. Oh, again, I just ask. So if you had a chance to amend the complaint, what, what else would you, is there something you would add to it? What is the context that you're saying? Well, considering the fact that there was some confusion about the lowest Rachel issue, I would have made it much more clear, I guess, that it was Rachel Steen that I was speaking of. I mean, now, if you get to file a new complaint, what, what, what do you think you could add that would save the, that would address the concerns? Well, specific assertions that each of these statements were false and that there's no evidence whatsoever that any of them are true and that they have harmed him, which Judge Matsumoto gave my client the opportunity in a very limited context to provide additional information. There was the whole issue about jurisdictional amount and my client then provided an affidavit about lost business and so forth. And also the fact that as a result of these postings, his family had gone through some, uh, had seen a mental health expert. Okay. So that was, but that was a very limited context where the judge wanted to see if there was specific, there was some allegation of specific damages and also to satisfy the jurisdictional amount opportunity. Uh, amending the complaint to conclude more specifics as to though alleging that those stating that those comments about Nazis and so forth were false would have also been added. Okay. But I think a key problem here, as I said before, was that there was discovery, but it was cut off without any explanation whatsoever. I mean, the, for some reason, Judge Matsumoto allowed my client to be deposed. But then when I, and I had agreed to that when it was requested by the defendants. But, um, when I made a similar request for Mr. Steen, not only did my adversary then decide he was going to oppose that, but Judge Matsumoto never ruled on that. And so there was kind of like partial discovery, but not full discovery. Now, of course, the EBT was not referenced in the 12B motion because it wouldn't be. But again, I really think that Judge Matsumoto was in her initial advice, withdraw your motion to dismiss, allow this to go to discovery and see if there is something here. And then you can go on a motion for summary judgment. The defendants chose to disregard Judge Matsumoto's recommendation. And then the judge granted the motion. I think that I, what I would request is a remand to the Judge Matsumoto so that in fact, the parties can go complete discovery and then go to a full motion for summary judgment. And if in fact, there isn't any proof that, or if there is proof that Mr. Lanassa's chief clerk, whoever that is, is a member of the Nazi party, well, then it satisfies that. Or if there is proof that my client has overcharged people on their credit cards, well, that shows he's dishonest. Or if there's proof that he's made anti-gay statements, well, that's proof. But if there is no such proof, then let a jury decide, first of all, if these are defamatory and if they do harm my client. I thank you very much, Your Honors. You both, and we will take the matter under advisement. Thank you, Your Honor.